THE COMMISSIONER OF HIGHWAYS OF THE TOWNSHIP OF
RICHMOND v. E. BROOX MARTIN.

*Highways—Repair of bridge over race—Liability of mill-owner.*

1. The exception from the operation of How. Stat. § 1453,—which
makes it the duty of all owners of mills or other water-works,
where any race or races appertaining to the same may cross a
highway, to keep a good and sufficient bridge or bridges over
the same,—of mills erected and races dug previous to the for-
mation of the highway, has reference to races existing when
the highway was laid out.

2. Where a dam and race were built at the same time, and the
earth taken from the race was used in the construction of the
dam, which was intended to be and was thereafter used as a
highway in place of a portion of an old road destroyed by its
construction, and the water was not let into the race until
after a bridge had been built over the race, which with the
dam was used instead of the old highway and bridge, such
race comes within the statute cited, and the owners of the
mill used in connection with said race are liable for its main-
tenance.

Error to Osceola. (Judkins, J.) Argued October 9,
1891. Decided October 30, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The
facts are stated in the opinion.

*Dumon & Cogger,* for appellant, contended:

1. Our claim is that the statute upon which the plaintiff bases his
cause of action has no application to cases like this one. By
this statute the owners of mill property are exempted from the
burden of maintaining bridges over the races in cases where
mills had been erected and races dug previous to the formation
of the highway. This, we insist, means previous to a highway
being laid or used at the point where the highway crosses the
race. Now, it appears conclusively from the findings that at
the time said race was made there was no traveled road, nor
road of any kind whatever, within the limits of the present

highway at the point where said highway crosses said race. It further appears that the bridge was built across the race in May, 1876; that the public first began crossing over the dam in the fall of the same year; that not until in December, 1878, was an attempt made to locate a lawful public highway over said dam and race, at which time the common council of Reed City adopted a resolution to locate the highway, formerly on the section line, on and across said dam; and that in June, 1883, the highway commissioner of Richmond township laid out a public highway over said dam and race. These facts clearly appear, and, under the previous decisions of this Court, judgment ought to have been rendered on the findings in favor of the defendant; citing *Merrill v. Kalamazoo*, 35 Mich. 211, 219.

*C. M. Beardsley (C. H. Rose,* of counsel), for plaintiff.

MORSE, J. The plaintiff sued defendant in justice's court for expenses incurred in June, 1890, in repairing a highway over a mill-race owned and occupied by defendant in the township of Richmond, Osceola county, claiming that it was the duty of defendant to maintain the same, and obtained judgment.

On appeal to the circuit, the circuit judge found substantially the following facts:

"1. That in the year 1866 a highway was laid out and opened on the section line between sections 9 and 10, in the township of Richmond, Osceola county, Mich., by the commissioner of highways of said township.

"2. That soon after said highway was laid out and opened up a bridge was built within the limits of said highway, where it crossed a stream called the 'Hersey Branch' of the Muskegon river. The main span of said bridge was about 50 feet in length, the approach at the south end about 16 feet in length, and the approach on the north end about 20 feet in length, which said bridge and approaches thereto were planked, and beyond the approach, on the north end, was a causeway for a distance, which approach and causeway could have been without much expense filled in and made a good dirt road.

"3. That the firm of James M. Reed & Co., of Reed City, Mich., on or about the 18th day of June, A. D.

1872, petitioned the board of supervisors of Osceola county for a permit to build a dam across said Hersey branch. Permission was given by the said board to construct said dam, with the proviso that, in case its construction should in any way interfere with or damage the bridge or highway, the said James M. Reed & Co. should be liable for all such damages, and should make all needful repairs at their own expense, the same to be accepted by the commissioner of highways of Richmond.

"4. That in the years 1874 and 1875, and in the spring of 1876, J. M. Reed & Co. built a dam near the section line between sections 9 and 10 of said township, where said section line crosses said Hersey branch, and down the stream from said section line to the bank on the south-easterly side of said stream, which dam and approaches were, and are at the present time, 30 or 40 rods in length.    *    *    *    *    *    *    *    *    *    *

"5. That when said J. M. Reed & Co. commenced the erection of said dam they began by the digging of the race through the bank on the south-easterly side of said stream, leading from the prospective mill-pond easterly to another point in said stream, a distance of some 30 or 40 rods, and that the said dam and race and approaches were built simultaneously, the earth taken from the race being used in the construction of said dam and approaches.

"6. That before J. M. Reed & Co. commenced the construction of said dam they knew that the building of it, and raising the water in the pond so created for manufacturing purposes, would destroy the highway on the section line between sections 9 and 10 for a long distance, and would also destroy the bridge on said highway over said Hersey branch.

"7. That J. M. Reed & Co. understood and agreed that they would build said dam and approaches thereto, and make the same for a highway leading from the said section line running north of said stream to the said section line on the south side of said stream; and when they commenced the construction of said dam it was their intention that the same should be used when completed as and for a highway, and they built said dam and race with that in view, to compensate the township for the destruction of the highway already laid out and in use on the section line between sections 9 and 10, at the point or place where the same crosses said Hersey

branch, and for some distance on either side of the same, and the bridge erected thereon.

"8. That said Reed & Co. constructed a waste-weir and chute in said dam on the north end thereof, about 50 feet in length, and at the time of the building of said dam erected a bridge over said waste-weir and chute, except the planking on the top thereof, and the said Reed & Co. built a bridge over the said race in May, 1876; that the bridge so built by Reed & Co. over said race was 24 feet in length and 14 feet in width, and the bridge maintained over said race since the construction thereof by Reed & Co. is of the same length and width.

"9. That J. M. Reed & Co. understood and agreed that they should make and maintain said bridge over said race after the erection thereof by them.

"10. That said bridge so built by them over said race was not within the limits of the old highway on the section line between sections 9 and 10 in said Richmond township.

"11. That the public began using said highway so built by Reed & Co. over their said dam, race, and approaches leading thereto from the said section line between sections 9 and 10, and given to the public by Reed & Co. to compensate the township of Richmond for the destruction of the old highway on the section line between said sections 9 and 10, in the fall of 1876, and since that time they have continued to use the same continuously for a public highway.

"12. That the erection of said dam, and raising the water in the pond adjacent thereto, destroyed the old highway and the bridge on the section line between sections 9 and 10 the entire length of said dam.

"13. That the said highway on the section line between sections 9 and 10, in said township, and the new route over the said dam and race, lead from a point several miles north of the village of Reed City, south into and through said village.

"13½. That said James M. Reed & Co. owned the lands on both sides of the highway destroyed by the erection of said dam on said section line between sections 9 and 10, in said township of Richmond, and had owned said lands for some time prior to the erection of the same; and they also owned the lands upon which said dam was erected and race dug at the time said dam was built and race dug, and had owned the same for some time prior

thereto. They also owned the lands between and leading from said dam to said section line between sections 9 and 10 at the time of the erection of said dam, and the digging of said race and bridging the same, and had owned the same for some time prior to that time, and also owned the same at the time said dam and bridge over said race were first commenced to be used as a highway."

14. That the defendant had acquired and held in June, 1890, the said water-power, and lands connected therewith, of James M. Reed & Co. Reed & Co. deeded to one George W. Morris or Morris & Martin, and defendant obtained his title of Morris.

"15. That at the time of said purchase by Morris, for the firm of Morris & Martin, from J. M. Reed & Co., said dam and bridge over the race and waste-weir and chute were being used as a highway by the public, being the main thoroughfare leading through the village of Reed City, and north of said village for several miles, of which fact Morris & Martin had actual knowledge, and that the same has been used as such since the fall of the year 1876.

"16. That at the time of the purchase of said water-power, and the land in connection therewith, by Morris & Martin, the testimony of the plaintiff shows that Morris was notified by Reed & Co. that it was the duty of said Reed & Co. to maintain the said bridge over said race, and that if he became the purchaser of said water-power, and the land in connection therewith, they (Morris & Martin) would have to maintain the same, which they agreed to do. This is denied by the testimony of the defendant. The proofs on the part of the defendant tended to show that Reed & Co. informed said Morris & Martin that they had completed the obligations on their part to be performed when the bridge over the race was completed, and that the village of Reed City would keep in repair the bridges over said dam and race. As to which of the two theories is correct I do not decide, as I do not deem it necessary in the determination of this case.

"17. That after the purchase of said water-power and lands by Morris & Martin, and during the year 1877, the said Morris & Martin built a grist and flouring mill for their own use adjacent to said race so dug by Reed & Co. to be used in connection with said water-power, which mill was built on the east side of said dam and

highway over the same, and said mill being the first one erected on said race or on said water-power by any one, and the said water-power had been used for no purpose till after the erection of said mill by Morris & Martin.

"18. That during the year 1885 the north part of the said dam broke away, and a portion of the bridge over the waste-weir and chute was destroyed. Morris & Martin repaired the dam, but neglected to repair the bridge, and, after the commissioner of highways of said township had notified Morris & Martin to repair the same, they refused so to do, and said commissioner proceeded to repair it; and during the years 1883 and 1884 the bridge over said race got out of repair, and the highway commissioner, after notifying said Morris & Martin to repair the same, and they refusing to do so, repaired said bridge.

"19. That the bridge over the waste-weir and chute is now 132 feet in length, and has been of that length since the year 1885.

"20. That in the year 1875 the village of Reed City was incorporated by Act No. 331 of Local Acts of 1875, which was approved April 16, 1875; that the water-power, and land connected therewith, are within the corporate limits of said village.

"21. That October 18, 1876, the common council of the village of Reed City, by resolution, instructed the street commissioner of said village to procure planking material for planking the bridge over the waste-weir and chute on the north end of said dam; that Reed & Co. had expended a considerable sum of money in building said dam and the highway, and the bridges on the same, and the council of the said village of Reed City procured said material to assist said Reed & Co. in completing said bridges.

"22. That December 9, 1878, the following action was taken by the council of the village of Reed City:

"'Moved and supported that the highway formerly on the section line be located on and across the dam of Morris & Martin and its approaches.'

"June 26, 1882, the following action was taken by the council of the village of Reed City:

"'Moved that Morris & Martin be authorized to raise the bridge across the river at the dam, and bring in bill for same.'

"23. That in June, A. D. 1883, the commissioner of highways of Richmond township, upon a survey furnished him by the defendant in this case, which survey was

made at defendant's request and at his own expense,. made an order laying out a highway; * * * that this order of the said commissioner did not change the route of the highway traveled by the public from the north end of said dam over. said dam and race to the section line, except at a point south of said dam proper and said race.

"24. That the reason the said commissioner made said order by which a change was made in the location of the highway south of said race was to give said defendant more room for a door-yard, said defendant intending to erect a dwelling-house at a point a short distance south of said race.

"25. That the water from said mill-pond, ponded and held back by said dam, was first let into said race in the latter part of the year 1876, which was after the bridge over said waste-weir and race had been used by the public as a highway.

"26. That before the commencement of this suit, and in June, A. D. 1890, the bridge over said race became out of repair and unsafe to travel, and the commissioner of highways of Richmond township requested the defendant in this suit to repair the same, which the defendant neglected and refused to do, whereupon the commissioner repaired the same, and expended in making such repairs the sum of $19.08.   *   *   *   *   *   *   *   *   *

"27. That the mill-race in question was commenced in 1874, completed in 1875, and the head-gate put in in the spring of the year 1876; that at the time the excavation for said race was dug and said race made there was no traveled road, nor road of any kind whatever, within the limits of the present highway at the point where said highway crosses said race."

The conclusion of law upon these facts was that the plaintiff was entitled to recover, and judgment was rendered in his favor..

The plaintiff's declaration counted specially upon the statutes, and added the common counts. The statutes relied upon are as follows:

"Sec. 1453.  *The People of the State of Michigan enact,* That it shall be the duty of all owners, occupiers, or possessors of mills or other water-works, where any race

or races appertaining to the same may cross a public highway, to keep a good and sufficient bridge or bridges, not less than fourteen feet in width, with a substantial railing on each side thereof, over the same, except where said mills have been erected and the races dug previous to the formation of said highway.

"SEC. 1454. In all cases where the owner or owners, occupiers or possessors, of any such mill or mills, or other water-works, shall refuse or neglect to make such bridge or bridges, or shall refuse or neglect to keep the same in good repair, it shall be the duty of the commissioner of highways of the township in which said highway may be to proceed forthwith to erect or repair such bridge or bridges, at the expense of the person or persons whose duty it was to have erected or repaired such bridges.

"SEC. 1454. The expenses so made or incurred by said commissioner of highways, in erecting or repairing such bridge or bridges, shall be a legal charge against the owner or owners, occupiers or possessors, of such mill or mills, or other water-works; and it shall be the duty of the said commissioner of highways to prosecute the person or persons so chargeable, on an action of *assumpsit*, for the expenses so made or incurred, and to cause the damages recovered in such prosecution to be applied towards the payment of said expenses."

The defense is a technical one. It is contended that the case does not fall within the statute because the race was dug before the highway was used or established.

It plainly appears from the finding of the circuit judge that a long distance of the old highway was destroyed by the building of the dam below it, thereby raising the water of the pond over it, and that the old bridge across the Hersey was rendered useless by it; and it was contemplated by all parties that the dam should be used as a highway in the place and stead of the portion of the old road so destroyed. The bridge over the race was built by J. M. Reed & Co. upon the understanding that it was their duty to do so, and to maintain it after it was constructed.

It is true that the circuit judge finds that when the

race was dug there was no highway where the present highway crosses the race, but he also finds that the dam and race were built at the same time, the earth taken from the race being used in the construction of the dam, and that the water was not let into this race until after the bridge had been built, and the highway over the dam and race in use in the stead of the old highway. and bridge, abandoned because destroyed by this dam and race. To all intents and purposes it must be considered that this race comes within the statute.

The exception in the statute upon which the defendant relies, to wit, "except where said mills have been erected and the races dug previous to the formation of said highway" (How. Stat. § 1453), clearly has reference to races existing when the highway is laid out, and for the reason that it would be an injustice to require a mill-owner to bridge his race every time and in every place the authorities saw fit to run a highway over it. But in this case the building of the dam, which necessitated the race and caused it to be dug, destroyed an existing high-way and bridge, and made it necessary to change the highway to this dam, and to build two bridges, one over the waste-weir and one over the race. It was the same, in effect, as if the dam had been built above the old highway and bridge, and the race dug across the old road. The building of this dam and race made it neces-sary that two bridges should be built where only one existed before. It was so understood at the time, and therefore the highway was changed, and the bridge over this race built at the expense of the mill-owners. It must be held that they are bound to maintain it.

The judgment is affirmed, with costs.

The other Justices concurred.